## MANDLER et al. v. UNITED STATES.
### No. 219.

Circuit Court of Appeals, Tenth Circuit.

Sept. 25, 1931

For original opinion, see 49 F.(2d) 201.

Paul Pinson, of Tulsa, Okl. (Walter L. Ransom, of Sapulpa, Okl., and D. H. Linebaugh, of Muskogee, Okl., on the brief), for appellants.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

PHILLIPS, Circuit Judge.

To be entitled to an allotment of Creek lands, an Indian's name had to appear on the final citizenship rolls of the Creek Tribe made and approved under section 21 of the Curtis Act of June 28, 1898 (30 Stat. 495, 502), and acts amendatory or supplementary thereto. Said section 21 reads in part as follows:

"The several tribes may, by agreement, determine the right of persons who for any reason may claim citizenship in two or more tribes, and to allotment of lands and distribution of moneys belonging to each tribe; but if no such agreement be made, then such claimant shall be entitled to such rights in one tribe only, and may elect in which tribe he will take such right; but if he fail or refuse to make such selection in due time, he shall be enrolled in the tribe with whom he has resided, and there be given such allotment and distributions, and not elsewhere."

While this provision applies only to the Five Civilized Tribes, it manifests the policy of Congress to limit an Indian to one allotment.

The Act of January 26, 1895 (28 Stat. 641), as amended by the Act of April 23, 1904 (33 Stat. 297), in part provided:

"That in all cases where it shall appear that a double allotment of land has heretofore been, or shall hereafter be, wrongfully or erroneously made by the Secretary of the Interior to any Indian by an assumed name or otherwise, or where a mistake has been or shall be made in the description of the land inserted in any patent, said Secretary is hereby authorized and directed, during the time that the United States may hold the title to the land in trust for any such Indian, and for which a conditional patent may have been issued, to rectify and correct such mistakes and cancel any patent which may have been thus erroneously and wrongfully issued whenever in his opinion the same ought to be canceled for error in the issue thereof, and if possession of the original patent can not be obtained, such cancellation shall be effective if made upon the records of the General Land Office."

As early as January 23, 1894 (Josephine Valley et al., 19 Land Dec. 329), the Assistant Attorney General for the Interior Department had occasion to pass upon the question "as to whether a person may be a member of two different tribes of Indians at the same time, and secure lands and other benefits from both tribes," under the Allotment Act of

February 8, 1887 (24 Stat. 388). He said among other things:

"It seems to me to be very clear that Congress never intended to confer a dual privilege upon any one Indian and no tribal arrangements or relations will receive such a construction as to give one person a twofold interest in a beneficent provision of a statute manifestly intended to treat all individuals affected thereby, in the same manner. * * *

"It will be observed from the above recited provisions of the statute, that it is specifically set forth how much each individual person is to receive by allotment. There is no ambiguity in the provisions of the statute, and it must be conformed to in accordance with its terms.

"I am of the opinion, therefore, that one person may not be a member of two tribes of Indians in a sense that will entitle him to secure lands from both tribes under the provisions of the act above referred to."

Since that date the Interior Department has uniformly held that an Indian is not entitled to an allotment as a member of more than one tribe. See Hagstrom v. Martell, 39 Land Dec. 508; Niels Esperson, 21 Land Dec. 271.

I think the foregoing clearly shows that Congress intended to adopt and to follow a uniform policy of restricting an Indian to an allotment as a member of one tribe only.

The Creek Agreement ratified and confirmed by the Act of March 1, 1901 (31 Stat. 861), in part provided:

"All lands of said tribe, except as herein provided, shall be allotted among the citizens of the tribe by said commission so as to give each an equal share of the whole in value, as nearly as may be. * * *" Section 3.

Section 28 of such treaty provided:

"No person, except as herein provided, shall be added to the rolls of citizenship of said tribe after the date of this agreement, and no person whomsoever shall be added to said rolls after the ratification of this agreement.

"All citizens who were living on the first day of April, eighteen hundred and ninety-nine, entitled to be enrolled under section twenty-one of the act of Congress approved June twenty-eighth, eighteen hundred and ninety-eight, entitled 'An act for the protection of the people of the Indian Territory, and for other purposes,' shall be placed upon the rolls to be made by said commission under said Act of Congress, and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands and distributive share of all the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly.

"All children born to citizens so entitled to enrollment, up to and including the first day of July, nineteen hundred, and then living, shall be placed on the rolls made by said commission; and if any such child die after said date, the lands and moneys to which it would be entitled, if living, shall descend to its heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly.

"The rolls so made by said commission, when approved by the Secretary of the Interior, shall be the final rolls of citizenship of said tribe, upon which the allotment of all lands and the distribution of all moneys and other property of the tribe shall be made, and to no other persons."

The case of Nan-pe-chee Polecat does not fall within any of the exceptions provided for in the treaty. We think it was the intent of the treaty provisions, referred to above, to exclude Indians who had received allotments as members of other tribes. If this be true, when the Interior Department allotted a tract of land to Nan-pe-chee Polecat as an absentee Shawnee and issued a patent therefor to her, it exhausted its power in the premises. Any subsequent allotment to her as a member of any other Indian tribe was without authority of law, void, and subject to collateral attack.

For these reasons, in addition to those given in the original opinion, we are of the opinion that the petition for rehearing should be denied.